364 A.2d 718

**In re Appeal of Mickey George COWELL,
Appellant (a juvenile).**

Superior Court of Pennsylvania.
Sept. 27, 1976.

178

John Sughrue, Public Defender, Clearfield, for appellant.

Richard A. Bell, Dist. Atty., Clearfield, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge.

This is an appeal from an order of the lower court adjudicating Mickey George Cowell, a delinquent on the basis of an incident which occurred at a grocery store in Beccaria Township, Clearfield County.

On June 11, 1974, in the early morning hours, Miss Jean Skonier surprised prowlers in her grocery store who beat and robbed her. At that time a juvenile, Randy Kephart, was wounded, and subsequently died, allegedly as a result of the wounds he sustained. Miss Skonier identified appellant as the person who robbed her and beat her into insensibility. At the conclusion of the hearing in the Juvenile Division of the court in this matter in August of 1974, the court held that the charges of burglary, theft, robbery, recklessly endangering another person, and assault were sufficiently made out against

appellant and found him delinquent. The court committed appellant to the State Correctional Institution at Camp Hill, Pennsylvania.

Appellant's first contention is that the Juvenile Court lacked jurisdiction over his person, because he was returned to Clearfield County from Cleveland, Ohio in a manner not conforming to the Interstate Compact on Juveniles.[1] Although not all the details of appellant's apprehension and return to Pennsylvania are within the record, it is undisputed that neither of the procedures described in Article V of the Compact were followed.[2] The Cleveland Police received information concerning appellant's involvement in the incident, took him into custody some time between June 17 (the date the petition alleging delinquency was filed) and July 5, 1974, and placed him in the local Juvenile Detention Center. On the latter date the court in Pennsylvania issued an order authorizing and empowering John R. Anderson, Sheriff of

1. Act of June 13, 1967, P.L. 31, No. 21, art. 7, § 731, 62 P.S. § 731.
2. The pertinent part of the Compact is Article V, providing for interstate rendition of juveniles who have escaped from confinement or have absconded from probation or parole supervision. (Appellant was on probation at the time of the incident.) The basic procedure under the Compact is, briefly, as follows: the court seeking custody of the juvenile presents to the appropriate court of the state where the juvenile is located a requisition for his return, the court where the juvenile is located issues an order to any law enforcement officer or other appropriate person to arrest and detain the juvenile; that court then holds a hearing to determine that the requisition is in order before delivering the juvenile over to the person acting as agent for the demanding authority. Alternatively, a person may be taken into custody without a requisition upon reasonable information that he is an absconder or escapee within the terms of the Compact, but in that event he must be brought forthwith before a judge of the appropriate court who shall determine whether sufficient cause exists for his detention under a detention order issued on a requisition. Appellant could not have been returned to Pennsylvania under Art. XVII, 62 P.S. § 731 (Supp.1975), concerning rendition of juvenile alleged to be delinquent, as Ohio has not adopted that provision. See In Re S.A., 60 Pa.D. & C.2d 55 (1973), and Ohio Rev. Code Ann. § 2151.56–61.

Clearfield County, and Trooper Wrabel to proceed to Cleveland for the purpose of obtaining custody of appellant and returning him to Clearfield County. Sheriff Anderson and Trooper Wrabel went to Cleveland, showed the person in charge of the Detention Center (a Mr. Robert Horley) the order and a copy of the petition, and were thereupon presented with appellant, whōm they forthwith brought back to Clearfield County. No Ohio court passed judgment on the legality of appellant's detention or his removal to Pennsylvania.

The Commonwealth's argument that the Juvenile Court obtained jurisdiction over the person of appellant when the petition alleging delinquency was filed is without merit. Once Trooper Wrabel and Sheriff Anderson arrived in Ohio, their right to take appellant into custody was governed by Ohio law. Section 2151.31(B) of the Ohio Revised Code[3] provides that a child may be taken into custody pursuant to the laws of arrest. Our reading of Ohio arrest law discloses only one situation in which a Pennsylvania law enforcement official could make an arrest in Ohio, and that is when he enters that state in fresh pursuit of a suspected felon.[4] This provision obviously has no application to the instant case.

The illegality of the procedure here employed is manifest. However, the dispositive question is what relief does the manner of appellant's apprehension entitle him to? The manner in which a person is brought into a state, once he has been given notice of the charges against him by indictment or information, does not affect the right of the state to try him for crimes committed within its borders. *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); *Common-*

3. Ohio Rev.Code Ann. § 2151.31(B) (Supp.1975).
4. Ohio Rev.Code Ann. § 2935.30 (1975).

*wealth ex rel. Eberle v. Rundle,* 202 Pa.Super. 84, 195 A.
2d 161 (1963); *Commonwealth ex rel. Master v. Baldi,*
166 Pa.Super. 413, 72 A.2d 150 (1950). The general rule
that illegal arrest or detention does not void a subsequent
conviction was most recently reaffirmed by the Supreme
Court in *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct.
854, 43 L.Ed.2d 54 (1975). The rationale for the rule
was explained in *In re Johnson,* 167 U.S. 120, 125–26, 17
S.Ct. 735, 737, 42 L.Ed. 103 (1897):

> "[I]t has been the settled doctrine of this court that
> a court having possession of a person or property can-
> not be deprived of the right to deal with such person
> or property until its jurisdiction is exhausted . . . .
>
> Although it has been frequently held that, if a de-
> fendant in a civil case be brought within the process of
> the court by a trick or device, the service will be set
> aside, and he will be discharged from custody. . . .
> The law will not permit a person to be kidnapped or
> decoyed within the jurisdiction for the purpose of
> being compelled to answer to a mere private claim, but
> in criminal cases the interests of the public override
> that which is, after all, a mere privilege from arrest."
> (Citations omitted.)

■■ Although a juvenile proceeding is not, strictly
speaking, a criminal proceeding, it is clear that the inter-
est of the state in protecting its citizens against criminal
acts committed by juveniles is not a "mere private
claim." This interest and the Commonwealth's interest
in the welfare of the juvenile must be balanced against
the desirability of deterring the shortcutting of legal pro-
cess by law enforcement officials. On this basis we con-
clude that the *Ker-Frisbie* rule is equally applicable to
juvenile delinquency proceedings.[5] It follows that the

5. We are not utterly without precedent in applying the rule to
what is, technically, not a criminal proceeding. See *Common-
wealth v. Kenney,* 80 Pa.Super. 418 (1923).

184

only relief to which the manner of appellant's apprehension and detention entitles him (aside from any civil remedy he might wish to pursue) is the exclusion of any evidence obtained by exploiting the illegality. The record discloses that an application to suppress certain statements made while appellant was in transit was granted. Appellant's person is not suppressible. See *Commonwealth v. Krall*, 452 Pa. 215, 304 A.2d 488 (1973).

Appellant's second assignment of error is that the procedure by which he was adjudged delinquent denied him due process.[6] In support of this claim appellant cites several rulings of the court below. The first complaint under this heading is that all attempts by appellant's counsel for pre-trial discovery were frustrated. Prior to hearing, counsel filed two discovery motions, one labeled as such and one captioned "Demand for *Brady* material."[7] These motions called for all the information which the Commonwealth had in its possession relative to the case. Pennsylvania policy on discovery is set forth in Rule 310 of Pennsylvania Rules of Criminal Procedure, 19 P.S.Appendix (1975). The rule provides for discovery of written statements of a defendant, forbids discovery of statements of witnesses, and permits other discovery or inspection only on proof of "exceptional circumstances and compelling reasons." The court

6. Although we will consider this assignment as challenging all the rulings differed with in the corresponding part of appellant's brief, we would much prefer that claimed errors be catalogued more specifically. We suggest to all counsel that saving the court the trouble of translating allegations of error from boilerplate will expedite any relief to which their clients are entitled.

7. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) held that the prosecution's suppression of unfavorable evidence, if that evidence is material and is requested by the accused, violates due process.

held in *Commonwealth v. Ware,* 459 Pa. 334, 368–69, 329 A.2d 258, 275–76 (1974) :

> "The rule does not purport to grant defendant a hearing as of right in which to prove 'exceptional circumstances and compelling reasons.' In order to be entitled to a hearing, he must at least allege circumstances and reasons, which, if established, would be exceptional and compelling."

Neither of appellant's motions contained any necessary allegations of exceptional and compelling reasons for additional disclosure. The court's summary dismissal of the demands at the beginning of the disposition hearing was therefore proper. As the Supreme Court observed in *Moore v. Illinois,* 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972) : "We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case."

■ Appellant had a right under *Brady* to any exculpatory evidence in the possession of the prosecution. The only evidence fitting that description was a telephone call to Sheriff Anderson from a person in Cleveland who claimed that appellant could not have committed the acts charged because he was in Cleveland at the time they were committed. Upon ascertaining, at the opening of the hearing, that counsel had full knowledge of the telephone conversation, including the identity of the caller, the court pronounced itself satisfied that there was no exculpatory evidence held by the Commonwealth of which the defense was unaware.

■ Appellant also takes issue with the limitations the court imposed on his cross-examination of Trooper Wrabel. When defense counsel attempted to elicit from the Trooper the details of another person's involvement in the crime, the Commonwealth objected. The court

sustained the objection on the ground that counsel was "getting too far afield," and that the alleged involvement of the other person was not relevant to the allegations against appellant. Counsel responded as follows:

"Mr. Tumpson: *Clearly that's correct, Your Honor, and I agree with everything this Court says,* except we asked for scientific results in our discovery. We asked if they had any other suspects. Now, this officer has testified —

The court's reaction:

Now, Mr. Tumpson, you've known for months that Mr. Moore was involved in this matter, or at least alleged to have been involved in this matter. That was in the newspaper. Proceed."

At that point counsel informed the court that he had every one of those clippings in his file. The colloquy between the court and appellant's counsel demonstrated that the exception taken to the court's ruling was quickly abandoned by appellant's counsel and fails to preserve for our review any other ground for excepting to the ruling. See *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A. 2d 873 (1975).

 Appellant's final due process argument asserts that the court erroneously refused to allow him to inspect the pretrial statements of Miss Skonier and Trooper Wrabel after those witnesses had completed their respective direct testimony. We agree. A defendant in a criminal case has a right to such inspection upon timely request once direct examination is completed. *Commonwealth v. Morris,* 444 Pa. 364, 281 A.2d 851 (1971); *Commonwealth v. Kontos,* 442 Pa. 343, 276 A.2d 830 (1971); *Commonwealth v. Smith,* 417 Pa. 321, 208 A.2d 219 (1965); *Commonwealth v. Robinson,* 229 Pa. Super. 131, 324 A.2d 441 (1974); *Commonwealth v. Swierczewski,* 215 Pa.Super. 130, 257 A.2d 336 (1969). The ideal time for such a request is at the end of direct

examination. Instantly, both requests were made during cross-examination. However, it is our opinion that a request is timely if it is made at any point at which granting it will enhance the effectiveness of cross-examination and not unfairly prejudice the Commonwealth. Among those rights which the Supreme Court extended by its decision in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 2d 527 (1967) to juveniles facing determinations of delinquency was the right of cross-examination; and, none of the differences of philosophy or purpose between juvenile courts and adult criminal courts justify a refusal to extend the rule to delinquency hearings.

Accordingly, the case is remanded for a new hearing to be conducted in a manner not inconsistent with this opinion.

SPAETH, J., files a concurring and dissenting opinion.

SPAETH, Judge (concurring and dissenting).

In other areas of the law, both criminal and civil, the courts have been resourceful in fashioning remedies to deter lawless official conduct. For example, in the criminal law, the exclusionary rule was made applicable to the states in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), as a deterrent to official violations of the personal privacy and security guaranteed by the Fourth Amendment, and in the civil, the federal courts have not hesitated to order reapportionment of state legislatures where official inaction or purposeful discrimination has diluted a citizen's right to vote. *See, e. g., Reynolds v. Sims,* 377 U.S. 533, 567, 84 S.Ct. 1362, 1384, 12 L.Ed. 506 (1964) ("[t]o the extent that a citizen's right to vote is debased, he is that much less a citizen") ; *Gomillion v. Lightfoot,* 364 U.S. 339, 347, 81 S.Ct. 125, 130, 5 L.Ed.2d 110 (1960) ([w]hile in form this is merely an act redefining metes and bounds, if the allegations

are established, the inescapable human effect of this essay in geometry and geography is to despoil colored citizens, and only colored citizens, of their theretofore enjoyed voting rights"). The reason for such decisions is set forth by Mr. Justice BRANDEIS in his dissenting opinion in *Olmstead v. United States*, 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928):

> Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this court should resolutely set its face.

It is therefore not sufficient simply to invoke *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 112, 96 L.Ed. 651 (1952), to defeat appellant's jurisdictional claim without fashioning a remedy for the Commonwealth's disregard of the procedure delineated by the Interstate Compact on Juveniles, 62 P.S. § 731. It is unrealistic to assume that appellant will assert a civil claim against the officers who took him from Ohio to Pennsylvania, or that they will be criminally prosecuted. *See* Scott, *Criminal Jurisdiction of a State Over a Defendant Based Upon Presence Secured by Force or Fraud*, 37 Minn.L.Rev. 91, 101–102 (1953). Furthermore, failure to fashion a remedy for official misconduct calls into question the continued constitutional vitality of the *Frisbie* rule. *See* Pitler,

*"The Fruit of the Poisonous Tree" Revisited and Shepardized,* 56 Calif.L.Rev. 579, 600 (1968).

Since the violation of the Interstate Compact is inextricably related to the very power of the Commonwealth to assert its jurisdiction over appellant, I do not think we make our insistence on compliance with the Compact adequately emphatic by confining appellant's relief to suppression of the statements he made while in transit from Ohio to Pennsylvania. Therefore, although I agree that appellant must be afforded a new delinquency hearing, I would direct the court below to order the Commonwealth to disclose its *entire* file to appellant, including all of the discovery sought by appellant's pre-trial motions. *Cf. Coleman v. Burnett,* 155 U.S.App.D.C. 302, 477 F.2d 1187, 1210–1212 (1973); *United States v. Pollard,* 335 F.Supp. 868 (D.D.C.1971) (subsequent indictment does not bar affording preliminary hearing to defendant where official misconduct aborts preliminary hearing or renders it meaningless.)