Jerry J. SEXTON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted Sept. 13, 1978.

Decided Jan. 2, 1979.

Rehearing Denied Jan. 29, 1979.

L. Vincent Ramunno, Wilmington, for defendant below, appellant.

Lucille K. Cirino, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMAN, C. J., DUFFY and McNEILLY, JJ.

McNEILLY, Justice:

Defendant, Jerry J. Sexton, was convicted by a Superior Court jury of possession of a deadly weapon by a person prohibited, 11 *Del.C.* § 1448, possession of a wiretap interception device, 11 *Del.C.* § 1336(d)(1), and two counts of receiving stolen property, 11 *Del.C.* § 851. He appeals, contending as error: prejudicial joinder of the charge possession of a deadly weapon by a person prohibited; the insufficiency of evidence to sustain convictions on the possession charges; the State's failure to provide him with a prior inconsistent statement of a State's witness; the admission of physical evidence seized pursuant to constitutionally deficient search warrants; the admission of various irrelevant and prejudicial testimony; the Trial Court's denial of his motion for a new trial; the illegal police tactics used to apprehend him; and, numerous prejudicial remarks by the prosecutor. We affirm defendant's convictions on the possession charges, but because of prejudicial prosecutorial remarks, we reverse his convictions for receiving stolen property.

I

Robert Gouge, an undercover Delaware State Police detective, by pre-arrangement, drove John Poteet, a police informant, and James Laws to several locations in the Glasgow, Delaware area where Poteet and Laws removed three CB radios from parked cars. They then proceeded to defendant, Jerry Sexton's residence, where only Poteet and Laws were admitted. Defendant paid Poteet and Laws fifty dollars for two of the radios, but rejected the third.

Later that morning, at about 7:00 A.M., police returned to defendant's residence with two warrants in search of the stolen CB radios and a chrome handgun, allegedly in defendant's possession. The police seized the radios, the handgun, a stolen IBM composer valued at approximately four thousand dollars, and a telephone repair device.

During the course of trial, the prosecutor made various remarks about defendant's character and credibility. In opening, she referred to defendant as an "armed robber", although defendant had stipulated to his prior felony conviction for the purpose of the weapon offense. She further characterized him as both a "fence" and a "con artist". In summation, she labeled defendant a "fagin", a teacher of crime to young boys in the neighborhood, although no such evidence was adduced during trial. She repeatedly referred to defendant's testimony as consisting of twelve "lies". Finally, she improperly told the jury that if her evidence were not reasonable and credible, that the Trial Judge would not have let her present it.

II

We first address defendant's contention that he was denied a fair trial because of the various prejudicial remarks by the prosecutor. He alleges that the effect of the prosecutor's remarks was to convict him upon his alleged bad character rather than upon the specific acts for which he was indicted.

The State asserts that there is substantial evidence on the record to support its characterizations of defendant as a "con artist" and a "fence". Such evidence includes: the testimony of Mrs. Rita Laws who quoted her son James as calling defendant a "fence"; the testimony of detective Gouge reflecting numerous statements of James Laws that defendant was a repeated purchaser of stolen goods; the testimony of Charles Cerasari describing defendant's attempt to bribe James Laws not to appear at trial; the testimony of an IBM saleswoman describing defendant's attempt to convince her to verify serial numbers on a sales slip which she never wrote. The State further contends that its characterization of defendant's testimony as "lies" was proper attack on reputation evidence and supported by a myriad of inconsistencies involving the defendant. While admitting error in referring to defendant as an "armed robber", the State claims that the error was

cured by the Trial Judge's cautionary instruction to the jury. Finally, the State concedes that its reference to the Trial Judge as a finder of witness credibility was error, but that it was harmless based on the weight of the evidence against the defendant.

An essential element the State must prove to convict an accused of receiving stolen goods is that the accused knew or believed the goods to be stolen. 11 *Del.C.* § 851; *State v. Shahan*, Del.Super., 335 A.2d 277 (1975). By impugning defendant's character and credibility, the prosecutor induced the jurors to believe that defendant knew the goods were stolen. The prosecutor's name-calling clearly was designed to inflame the passions of the jurors and convince them that defendant was a particularly despicable individual who necessarily committed the crime. The denomination of defendant's testimony as "lies" amounted to the testimony of an unsworn witness and a statement by the prosecutor that she was personally convinced of defendant's guilt. Furthermore, the prosecutor's remark that the Trial Judge would not have admitted the State's evidence if it were not reasonable and credible was clearly improper because it insinuated that the Trial Judge believed defendant guilty. *Washam v. State*, Del.Supr., 235 A.2d 279 (1967).

Not every improper remark by a prosecutor requires reversal, but only that which prejudicially affects substantial rights of the accused. Super.Ct.Crim.R. 52(a); *Edwards v. State*, Del.Supr., 320 A.2d 701 (1974). Here, we think the cumulative effect of the prosecutor's remarks clearly prejudiced the accused's ability to defend himself against the charges of receiving stolen property.

However, we conclude that the prosecutor's remarks did not substantially affect defendant's right to a fair trial on the charges of possession of a deadly weapon by a person prohibited and possession of a wiretap interception device. Where the only substantial issues on those charges were the existence of the prohibited items and their possession by defendant, the prosecutor's remarks about defendant's character and credibility could have had little bearing on their determination.

Although the prosecutor operates within an adversary system, his duty is to seek justice, not merely convictions.

"A prosecuting attorney represents all the people, including the defendant who was being tried. It is his duty to see that the State's case is presented with earnestness and vigor, but it is equally his duty to see that justice be done by giving defendant a fair and impartial trial." *Bennett v. State*, Del.Supr., 164 A.2d 442, 446 (1960).

That same duty requires the prosecutor to refrain from legally objectionable tactics calculated to arouse the prejudices of the jury.[1]

1. ABA STANDARDS, THE PROSECUTION AND DEFENSE FUNCTIONS (Approved Draft, 1971) provides in pertinent part:

"1.1 The function of the prosecutor.

   (a) The office of prosecutor is an agency of the executive branch of government which is charged with the duty to see that the laws are faithfully executed and enforced in order to maintain the rule of law.

   (b) The prosecutor is both an administrator of justice and an advocate; he must exercise sound discretion in the performance of his functions.

   (c) The duty of the prosecutor is to seek justice, not merely to convict.

     \*   \*   \*   \*   \*   \*

5.5 Opening statement.

   In his opening statement the prosecutor should confine his remarks to evidence he intends to offer which he believes in good faith will be available and admissible and a brief statement of the issues in the case. It is unprofessional conduct to allude to any evidence unless there is a good faith and reasonable basis for believing that such evidence will be tendered and admitted in evidence.

     \*   \*   \*   \*   \*   \*

5.6 Presentation of evidence.

     \*   \*   \*   \*   \*   \*

   (b) It is unprofessional conduct for a prosecutor knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the judge or jury.

     \*   \*   \*   \*   \*   \*

### III

We turn now to defendant's other arguments.

Defendant first asserts that he was unduly prejudiced by joinder of the offense, possession of a deadly weapon by a person prohibited, with the other offenses for which he was tried. Defendant has failed to establish in his appeal how such joinder was prejudicial; moreover, he failed to move prior to trial for relief from the alleged prejudicial joinder, thereby appearing to waive any objection he may have had. Superior Court Criminal Rule 12(b).

In any case, Superior Court Criminal Rule 8(a), which provides for joinder of offenses, "is designed to promote judicial economy and efficiency, provided that the realization of those objectives is consistent with the rights of the accused." *Mayer v. State*, Del.Supr., 320 A.2d 713, 717 (1974). We believe that the purposes of judicial economy and efficiency out-weigh defendant's unsubstantiated claims of prejudice. Compare *Bates v. State*, Del.Supr., 386 A.2d 1139 (1978). Joinder was proper; therefore, defendant's contention is without merit.

### IV

Citing as authority *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), defendant next alleges reversible error in the State's failure to provide him with a State's witnesses' pretrial inconsistent statement for purposes of cross-examination.

"[I]t is now settled in this jurisdiction that the State may be required to produce at the trial a prior written statement of a witness after he has been called to the stand by the State and his credibility has been put in issue." *State v. Hutchins*, Del. Super., 138 A.2d 342 (1957). However, the State is not required to offer voluntarily to the defense its witnesses' prior written statements. The defendant must establish a proper foundation for such statements, which includes a demand on the State for their production. Compare *Appeal of Cowell*, Pa.Super., 243 Pa.Super. 177, 364 A.2d 718 (1976). Here, defendant made no demand for the pretrial statement of the State's witness; consequently, there was no error in the State's withholding it from the defendant.

### V

Defendant next contends that certain physical evidence admitted at trial was seized pursuant to constitutionally deficient search warrants. He claims that the warrants for the stolen CB radios and the chrome handgun were invalid because of defective supporting affidavits. He argues that the affidavit to the warrant for the radios was deficient in that it failed to establish the reliability of the hearsay informants, John Poteet and James Laws. He also argues that the affidavit to the warrant for the handgun was invalid for two reasons: (1) the undisclosed informant's reliability is supported only by the affiant's opinion, not by corroborating facts and (2) the affidavit is stale for lapse of time between the observations of the informant and the application for the warrant.

We find that both warrants were issued upon constitutionally sufficient affidavits. It is axiomatic that an application for a search warrant must be sup-

5.8 Argument to the jury.
    (a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
    (b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

    (c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.
    \*    \*    \*    \*    \*    \*
5.9 Facts outside the record.
    It is unprofessional conduct for the prosecutor intentionally to refer to or argue on the basis of facts outside the record whether at trial or on appeal, unless such facts are matters of common public knowledge based on ordinary human experience or matters of which the court may take judicial notice."

ported by a sworn affidavit that on its face shows facts constituting probable cause to search. Del.Const. Art. I, § 6. An affidavit may be based on hearsay and need not reflect the direct personal observations of the affiant. Of course, such hearsay may consist of the informant's tip. However,

"In order for the . . . [Magistrate] to determine probable cause, the law requires that there be a showing that (1) the informant acquired this information in a reliable manner, and that (2) there are sufficient reasons for believing the informant himself is credible or his information is trustworthy."

*Schramm v. State,* Del.Supr., 366 A.2d 1185, 1189 (1976); see also, *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *State v. Poli,* Del.Supr., 390 A.2d 415 (1978); *Garner v. State,* Del.Supr., 314 A.2d 908 (1973); *Wilson v. State,* Del.Supr., 314 A.2d 905 (1973).

■ The reliability of informants, John Poteet and James Laws, was established in the affidavit to the warrant for the radios by the direct personal observations of the affiant, detective Gouge: that Poteet and Laws left his car empty handed and returned with the radios which they claimed were stolen; that Poteet and Laws entered defendant's trailer with the same radios; and finally, that Poteet and Laws returned to his car without two of the radios and informed him that defendant had paid them fifty dollars for the two.

The informants' reliability was further insured because their information consisted of declarations by them against their penal interest. "The declarations not only directly implicated [defendant] but we believe a disinterested and prudent observer would have credited these statements as reliable." *Agnellino v. New Jersey,* 3 Cir., 493 F.2d 714, 726 (1974); see also *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1973).

■ The affidavit to the warrant for the handgun provided sufficient reasons for believing the undisclosed informant was credible. An informant's reliability may be established by the affiant's statement of his own knowledge of factual circumstances which demonstrate to the affiant that his informant is a reliable source of information. See *State v. Lambert,* Me.Supr., 363 A.2d 707, 710 (1976). The test for determining the reliability of an undisclosed informant is not his record in aiding arrests or convictions, but whether his information has ever been verified in the past. See *People v. Dumas,* Cal.Supr., 9 Cal.3d 871, 109 Cal.Rptr. 304, 512 P.2d 1208 (1973); *People v. Lawrence,* Ill.App., 133 Ill.App.2d 542, 273 N.E.2d 637 (1971).

Here, the affiant attested that the undisclosed informant had related directly to him specific information concerning five felony offenses which had occurred within the past three months. The affiant further attested that he corroborated the information as reliable and true. Those statements were ample indicia of the undisclosed informant's reliability.

■ Defendant's contention that the undisclosed informant's observations were too remote in time and therefore, the affidavit was stale, is also without merit. Although time is a primary element in establishing probable cause, the mere passage of time is not enough to invalidate a warrant. *United States v. Harris,* 3 Cir., 482 F.2d 1115 (1973); *State v. Ramirez,* Del.Super., 351 A.2d 566 (1976). In determining the vitality of probable cause, the Court must consider the element of time together with the nature of the unlawful activity. *Harris, supra; United States v. Johnson,* 10 Cir., 461 F.2d 285 (1972); *State v. Pulgini,* Del. Supr., 374 A.2d 822 (1977).

■ Here, the application for the search warrant was filed on May 21. It appears in the affidavit that the informant saw defendant in the possession of a handgun on two occasions, one time in March and another unspecified time "since the month of March." The informant further stated that on the latter occasion, defendant was using the weapon for target practice. Those statements indicate that defendant kept the

weapon for his personal use; thus, his possession appeared to be of a continual nature, not merely isolated violations. It was reasonable to believe that defendant was still in possession of the handgun at the time of application for the warrant and therefore, the affidavit was not stale.

Defendant's contention that the search warrants for the radios and handgun were constitutionally deficient is without merit.

## VI

Defendant contends that the Trial Court erred in admitting the following irrelevant and prejudicial evidence:

    A.  Testimony of a State's witness concerning defendant's theft of a CB radio not mentioned in the indictment;

    B.  Testimony of Charles Cerasari concerning defendant's alleged bribery of James Laws not to testify; and

    C.  Testimony of Rita Laws concerning her son's prior dealings with defendant.

We find no reversible error on any of these grounds.

## VII

    Defendant next contends that there was sufficient evidence to sustain either of his convictions for the possession offenses. We disagree.

It appears that the police seized the handgun from the fuse box in the only bedroom of defendant's trailer. At trial, defendant claimed that the weapon belonged to his girlfriend, with whom he shared his trailer, and consequently, that the weapon was actually within her control. However, such living arrangement would not preclude the possibility of his possessing the weapon, but could create merely the possibility of their joint possession. The jury need only have found the weapon physically available and accessible to the defendant and their verdict is amply supported by the record. See *Canty v. State*, Del.Supr., 394 A.2d 215 (1978); *Mack v. State*, Del.Supr., 312 A.2d 319 (1973).

    Defendant also argues that the telephone equipment seized from his utility shed and admitted into evidence was not "primarily useful" for intercepting communications, within the meaning of 11 *Del.C.* § 1336(d)(1), because adjustments to the equipment were necessary to put it to that use.

We think such a strict interpretation of the statute is unreasonable in view of the general statutory design to prevent the illegal invasion of privacy by unauthorized individuals. See also 11 *Del.C.* § 1335. It appears that the equipment seized was a repair device ordinarily used by telephone linemen to test working circuits. Proper attachment of the repair device to a telephone wire would enable its user to overhear telephone conversations. Clearly, that repair equipment could be termed as "intercepting device" within the meaning of § 1336(d)(1). See also 11 *Del.C.* §§ 1336(a)(6)a, (e)(1).

Defendant's contention that there was insufficient evidence to sustain either of his convictions for the possession offenses must fail.

## VIII

    Defendant next contends that the Trial Court erred in denying his motion for a new trial on the basis of newly discovered evidence, which he argues, tends to show that three State's witnesses provided perjured testimony at trial.

The alleged recantations of the State's witnesses are questionable at best. James Laws' statement was made nearly one year after defendant's trial while he was serving a prison sentence for charges not apparent from the record. His credibility was effectively challenged at trial by both defendant and the State. In her letter to the Trial Judge, Rita Laws merely repeated her son's changed story. She makes no direct statement that her testimony at trial was perjured. Finally, defendant offers only an unsigned letter addressed to Jerry (presumably the defendant), which he claims was written by Charles Cerasari expressing regret for his perjury concerning defendant's alleged bribery of Jimmy Laws.

We cannot state categorically that the Trial Court should have been reasonably well satisfied that the testimony of the State's witnesses was false. See *United States v. Wallace*, 4th Cir., 528 F.2d 863 (1976); *Larrison v. United States*, 7 Cir., 24 F.2d 82 (1928). Consequently, we do not think that defendant's newly discovered evidence would probably have changed the result if a new trial had been granted. *State v. Lynch*, Del.Ct. of O. & T., 128 A. 565 (1925). The Trial Court properly exercised its discretion in denying defendant's motion for a new trial on the basis of newly discovered evidence; thus, defendant's contention is without merit.

### IX

■ Finally, defendant contends that the police tactics used to apprehend him were illegal. He argues that the police actively participated in the theft of the CB radios in order to entrap him into receiving stolen property. There is no evidence on the record to support this contention; therefore, it also must fail.

AFFIRMED as to the convictions for possession of a deadly weapon by a person prohibited and possession of a wiretap interception device; REVERSED and REMANDED for a new trial upon the charges of receiving stolen property.