IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ELI ESCALERA, | § | |
| | § | No. 329, 2017 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1606024326A&B (N) |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: May 9, 2018
Decided: May 25, 2018

Before **VALIHURA**, **SEITZ** and **TRAYNOR**, Justices.

# **O R D E R**

This 25th day of May 2018, having considered the briefs and the record below, it appears to the Court that:

(1)    The State accused Eli Escalera of threatening another person with a knife. A jury convicted him of aggravated menacing, possession of a deadly weapon during the commission of a felony, and disorderly conduct. Escalera was also a person prohibited from possessing a deadly weapon and, after the jury returned its verdict, he was tried and found guilty at a bench trial of a person-prohibited charge. On the basis of the person-prohibited conviction, he was declared a habitual offender, and the Superior Court sentenced him to twenty-five years of imprisonment.

(2)    Escalera's theory at trial was that he was never in possession of a knife and that a knife the police recovered—which they found in a grassy area near where the confrontation occurred—did not belong to him. Notably, however, he told law enforcement that "his DNA would be on the knife because he threw it."[1]  As it turned out, a DNA test of the knife did not find his DNA, but he was convicted anyway. His sole contention on appeal is that the prosecutor, during her closing argument, mischaracterized the nature of the DNA testing that the State performed on the knife to make it seem as though the test was less comprehensive—and thus more likely to have simply missed collecting his DNA—than the test actually was. He claims that her mischaracterization of the record—and the trial court's failure to adequately address it—prejudiced his defense.

(3)    At trial, it was undisputed that the detective used two swabs to swab the knife at two locations and that one swab returned a partial DNA profile that was not consistent with Escalera's while the other swab did not contain enough DNA material to draw any conclusions.

(4)    During his closing argument, Escalera's counsel argued that this inconclusive DNA evidence tended to exonerate Escalera, going so far as to tell the jury that "we know that Mr. Escalera's DNA is not on the knife."[2]  The prosecution

---

[1] App. to Answering Br. B45.
[2] App. to Opening Br. A026.

2

attempted during its rebuttal to identify the locations on the knife that were swabbed and observed, among other things, that "there is no testimony about whether the defendant's DNA is anywhere else on [the] knife."[3]

(5) According to Escalera, the prosecutor's rebuttal argument, to which he objected twice, mistakenly suggested that the two areas on the knife that were tested were each swabbed only once—with one swab being used to swab one area, and the other swab being used to swab the other area—rather than both areas each being swabbed twice (once with each of the two swabs). In his view, if both swabs were applied to both parts of the knife—which is arguably more consistent with the detective's testimony—that would make it less likely that his DNA was simply missed, and more likely that his DNA was not there. The trial judge sustained both of Escalera's objections and, in between the two putatively misleading comments, provided a curative instruction:

> Closing arguments are required to be limited to the evidence presented, and the State misspoke when she said two different locations of the knife. That was not testimony. You can continue.[4]

(6) Prosecutors are allowed to "comment on the evidence and the reasonable inferences therefrom,"[5] provided they stay within the bounds of "the facts of the case"[6] and do not "misstate the evidence or mislead the jury as to the

---

[3] *Id.* at A028.
[4] *Id.*
[5] *Hughes v. State*, 437 A.2d 559, 573 (Del. 1981).
[6] *Hooks v. State*, 416 A.2d 189, 206 (Del. 1980).

inferences it may draw."[7] But an improper remark does not require a new trial unless it "prejudicially affect[ed] the 'substantial rights' of the accused."[8] That translates to what is "essentially review for 'harmless error,'"[9] and it takes the form of two-step inquiry. First, the prosecutor's actions are reviewed *de novo* to determine whether they were "improper."[10] If so, three factors must then be evaluated to determine whether the defendant suffered reversible prejudice: "(1) the closeness of the case, (2) the centrality of the issue affected by the error, and (3) the steps taken to mitigate the effects of the error."[11]

(7)    It is questionable here whether the prosecutor's statement mischaracterized the record, which is not a model of clarity regarding the number of swabs and the locations on the knife swabbed by each.  But even if the prosecutor mischaracterized the DNA collection, the misstep does not rise to the level of reversible error.

(8)    First, this was not a particularly close case.  Escalera's defense is that he had no knife, but both the victim and a responding police officer testified that they saw Escalera with a knife, they each positively identified the knife at trial, and

---

[7] *Daniels v. State*, 859 A.2d 1008, 1011 (Del. 2004) (quoting *Sexton v. State*, 397 A.2d 540, 545 (Del. 1979)).

[8] *Id.*

[9] *Baker v. State*, 906 A.2d 139, 148 (Del. 2006).

[10] *Spence v. State*, 129 A.3d 212, 219 (Del. 2015).

[11] *Id.* (citing *Hughes*, 437 A.2d at 571); *see Daniels*, 859 A.2d at 1011–12 (applying this framework to a claim that a "prosecutor mischaracterized the significance of the DNA evidence").

a knife matching the victim's description was recovered from the approximate area where she testified that she saw Escalera dispose of it. Moreover, Escalera told the officer who collected the DNA sample from Escalera that "his DNA would be on the knife because he threw it and that other people's DNA would also be on the knife."[12]

(9) Second, the prosecutor's misstatement—if it was a misstatement—did not strike at a central issue. This is not a case where the prosecutor mischaracterized the outcome of a DNA test, such as by suggesting that an inconclusive test was incriminating or an exculpatory test was inconclusive. For Escalera, the most this DNA test could have established was an absence of evidence—that his DNA was not recovered from the swabs. The difference between his reading of how the test was performed and the characterization he believes that the prosecutor imparted to the jury related only to how thoroughly the knife was tested; neither reading could have definitely exonerated him or incriminated him.

(10) Finally, the trial court responded adequately to remedy the prosecutor's purported mischaracterization. Escalera believes that the trial judge should have given a second curative instruction after his counsel's second objection, but the statement that Escalera is most concerned about—the prosecutor's suggestion that the two swabs were taken from "two different portions of the knife"—occurred prior

---

[12] App. to Answering Br. B45.

to his *first* objection. The trial judge responded to that objection both by correcting the record (telling the jury, "There was no evidence where the swabs were taken from") and by reminding the jury that "[c]losing arguments are required to be limited to the evidence presented." Escalera's second objection was in response to the prosecutor's statement that "[o]nly certain portions of the knife were swabbed by Detective Pantalone,"[13] but that statement was a fair characterization of the detective's testimony, who testified that he "swabbed the thumb screw area and the serrated portion of the blocking mechanism because [he] figured that's the first thing someone would probably touch." In any event, the trial judge sustained his second objection, and the prosecutor then moved on. Given that the trial judge had reminded the jury only moments before that attorney summations are not evidence, repeating the instruction a second time was unnecessary to dispel any prejudice Escalera might have suffered.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[13] *See* Opening Br. 9 ("Shortly thereafter the State remarked that '[o]nly certain portions of the knife were swabbed by Det. Pantalone,' and the Defendant again objected." (citation omitted)).

6