**Waverly WHITE, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 354,2002.

Supreme Court of Delaware.

Submitted: Jan. 14, 2003.
Decided: Feb. 6, 2003.

Timothy G. Willard, Fuqua and Yori, P.A., Georgetown, Delaware, for Appellant.

Kim Ayvazian, Deputy Attorney General, Department of Justice, Georgetown, Delaware, for Appellee.

Before WALSH, HOLLAND and STEELE, Justices.

STEELE, Justice.

In April 2002, a Superior Court jury found the Appellant, Waverly White, guilty of Robbery in the First Degree,[1] Assault

---

1. 11 *Del. C.* § 832(a)(1).

in the Third Degree,[2] and Possession of Drug Paraphernalia.[3] In this appeal, White asserts three grounds of error: (i) the State's untimely disclosure of a witness' criminal record denied him the right to a fair trial; (ii) the prosecutor's comments regarding the victim's absence from trial amounted to plain error; and (iii) the trial judge erred by denying his motion for judgment of acquittal.

## I.

White and co-defendant, Kathy Dottery, allegedly encountered three men outside a tavern. One of the three men, Steve Swift, was wearing silver necklaces. White allegedly pushed Swift to the ground, grabbed Swift's chains, and walked off.

Swift's companion, Frank Petroccitto, allegedly chased after White and demanded the return of the necklaces. Petroccitto testified to grabbing White in an attempt to neutralize him. White then punched Petroccitto and threw Petroccitto to the ground. Petroccitto again chased after White and caught him from behind. White allegedly brandished a semi-automatic weapon, struggled with Petroccitto, and ran into the woods.

The police arrived at the scene within minutes and soon apprehended White and Dottery. The police drove Petroccitto to the area and he identified White and Dottery as the attackers. The police searched White and found a crack pipe. The necklaces and gun were never located.

## II.

White asserts that the State's disclosure of Petroccitto's criminal history a week before trial should be considered an untimely discovery disclosure, and therefore, a Brady[4] violation. In Brady, the United States Supreme Court held that the State cannot suppress evidence favorable to a defendant if that evidence is material either to guilt or to punishment.[5] If the evidence is both favorable and material, a determination must be made whether its "delayed disclosure precluded ... effective use of the information at trial."[6] When "a defendant is confronted with delayed disclosure of Brady material, reversal will be granted only if the defendant was denied the opportunity to use the material effectively."[7]

Here, defense counsel had the opportunity to object to any untimely disclosure or assert a Brady violation before trial, but chose not to do so. In addition, defense counsel had a week to decide how to use the criminal history the State did disclose. At trial, defense counsel questioned Petroccitto outside the presence of the jury and after hearing Petroccitto's responses, voluntarily chose not to use the criminal history during cross-examination before the jury. Defense counsel claims the delayed disclosure resulted in the inability to subpoena any further criminal records. Defense counsel, however, neither asked for a continuance nor objected at trial. This untimely disclosure did not deny defense counsel an opportunity to use the criminal history effectively and therefore does not constitute a Brady violation.

**2.** 11 Del. C. § 611(1).

**3.** 16 Del. C. § 4771.

**4.** Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**5.** 373 U.S. at 83, 83 S.Ct. 1194.

**6.** Atkinson v. State, 778 A.2d 1058, 1062 (Del. 2001) (quoting Lilly v. State, 649 A.2d 1055, 1057 (1994)).

**7.** Atkinson, 778 A.2d at 1062 (quoting Rose v. State, 542 A.2d 1196, 1199 (1988)).

### III.

■ In a related and almost synonymous argument, White also asserts that the untimely disclosure denied him the right to cross-examine Petroccitto effectively about multiple arrests for falsely reporting an incident. The record reveals that defense counsel never attempted to cross-examine Petroccitto in front of the jury about his criminal record, and agreed to the State's suggestion that *voir dire* examination take place outside the presence of the jury. Defense counsel merely asked to clarify Petroccitto's record, and after doing so, chose not to make a further inquiry. Although Petroccitto's credibility was an important issue, accepting White's argument would require the trial judge to ask the questions for counsel. The disclosure, although untimely, provided enough information for defense counsel to make an inquiry. Accordingly, White cannot establish a *Brady* violation on the theory that his trial tactics were driven by untimely disclosure.

### IV.

■ White next asserts plain error occurred when the prosecutor explained why Swift did not appear at trial. At trial, Petroccitto testified that Swift moved to Chicago for work-related reasons. Defense counsel argued during his summation that the State's case hinged on the robbery charge and that the State's case was weak because the jury had "not heard from the robbery victim." [8] He repeated the argument about the missing robbery victim later in his summation. [9] The prosecutor responded in rebuttal as follows:

Mr. Swift is another part of this case. There is again no law or rule, although the innuendo is such from [defense counsel] that he would have to have Mr. Swift here for there to be a good case, when you've got Mr. Petroccitto and Kathy Dottery both as eyewitnesses, seeing that man snatch this silver necklace of Mr. Swift. You don't need Mr. Swift here. And you were even given testimony as to where Mr. Swift is; Chicago with a new job. [10]

Although White did not object to this remark, he now argues the State improperly bolstered Petroccitto's testimony by implying that Swift's testimony would support the State's position. He also argues that the reference to Chicago "implied Swift's cooperation but for the distance needed to return to testify in Delaware." [11] Improper vouching occurs when the prosecutor implies some personal superior knowledge, beyond that logically inferred from the evidence at trial, that the witness has testified truthfully. [12] When analyzing the impact of prosecutorial vouching, this Court has approved the three-prong test formulated in *Hughes v. State.* [13] However, we need not analyze the "impact" of the vouching because the prosecutor's remarks here were appropriate. The prosecutor merely repeated Petroccitto's testimony about Swift's whereabouts, defense counsel's contention from his summation, and argued that the jury should rely on testimony they had heard from witnesses who had been subject to cross examination. The explanation for Swift's absence, given by a witness subject to cross, was neither corroborated nor made more credible simply by the prosecutor's reference to it

---

**8.** Appendix to Appellant's Opening Brief at 108 (defense counsel's closing argument).

**9.** *Id.* at 122.

**10.** *Id.* at 123.

**11.** Appellant's Opening Brief at 18.

**12.** *Miller v. State,* 2000 WL 313484 *4 (Del. Supr.).

**13.** 437 A.2d 559 (1981).

during rebuttal summation. No vouching occurred.

## V.

■ Finally, White asserts that the trial judge improperly denied the motion for judgment of acquittal on the charge of Robbery in the First Degree. White contends that the robbery was completed after he allegedly grabbed the necklaces from Swift's neck. Thus, according to the White, Petroccitto's later acts to retrieve the necklaces constituted a form of self-help that occurred after the robbery. White theorizes that Robbery in the First Degree requires an injury to the victim as a result of the theft. White asserts that the injury here occurred after the robbery; thus, although a conviction for Robbery in the Second Degree could stand, the Robbery in the First Degree conviction must be vacated.

White relies on *Yocum v. State*[14] in support of his argument. In *Yocum,* a defendant believed that certain guests at his house stole $50. The defendant, brandishing a gun, chased after the victims and forced the victims to return to the house so a search could be conducted. The defendant argued that the trial judge erroneously refused to instruct the jury on the defense of justification. We held that the use of force in the protection of property does not extend to efforts to retrieve the property after the theft is accomplished.[15]

This case is distinguishable from *Yocum* because the robbery statutes contemplate potential resistance from the victim and seek to enhance punishment for any perpetrator whose acts injure any person not involved in the offense itself. Robbery in the Second Degree provides:

(a) A person is guilty of robbery in the second degree when, in the course of committing theft, the person uses or threatens the immediate use of force upon another with the intent to:

> (1) Prevent or *overcome resistance to the take of the property or the retention therefore immediately after the taking* ...[16]

Robbery in the First Degree provides:

(a) A person is guilty of robbery in the first degree when the person commits the crime of robbery in the second degree and when, in the course of the commission of the crime or *of immediate flight therefrom,* the person or another participant in the crime:

> (1) Causes physical injury to *any person* who is *not a participant* in the crime; or

> (2) Displays what appears to be a deadly weapon; ...[17]

Petroccitto confronted White as White left the area. White then used force to escape with the stolen property when he punched Petroccitto in the face. The robbery statute contemplates a factual scenario where the robbery itself might provoke physical injury to any person, not necessarily the victim of the robbery, who does not participate in the crime. White's argument, if adopted, would shield a person who commits a robbery from conviction of First Degree Robbery merely because a brave or foolhardy eyewitness intervenes. The broad language chosen by the General Assembly, "any person who is not a participant" is properly consistent with a clear public purpose to protect all persons who may be injured arising out of the commission of a robbery, not just the victim.

---

14. 777 A.2d 782 (Del.2001).

15. *Id.* at 784.

16. 11 *Del. C.* § 831 (emphasis added).

17. 11 *Del. C.* § 832 (emphasis added).

Accordingly, White's argument is without merit.

The judgment of the Superior Court is AFFIRMED.