IN THE SUPREME COURT OF THE STATE OF DELAWARE

BRANDON ROBINSON,     §
    §    No. 152, 2016
    Defendant-Below,     §
    Appellant,     §    Court Below: Superior Court
    §    of the State of Delaware
    v.     §
    §    Cr. ID. No. 1009012821
STATE OF DELAWARE,     §
    §
    Plaintiff-Below,     §
    Appellee.     §

Submitted: October 5, 2016
Decided: October 13, 2016

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## <u>ORDER</u>

This 13th day of October, 2016, having considered the briefs and the record below, it appears to the Court that:

(1) In 2013, a New Castle County grand jury indicted Brandon Robinson for First Degree Murder, Attempted First Degree Murder, and two counts of Possession of a Firearm during the Commission of a Felony for the shooting death of Cameron Johnson and the shooting injury of Jarren Glandton. In the middle of trial, one witness told the prosecutor for the first time that Glandton, the main eye witness to the murder, said he was not sure he saw Robinson shoot the gun. The prosecutor disclosed the information to Robinson's counsel and the court

immediately.  Another trial witness, a police officer, testified for the first time that Glandton initially said he did not know who shot him.  The officer's statement was not in her police report.  The jury convicted Robinson of first degree murder and one of the weapon possession offenses.  It acquitted him of the other charges.  We affirmed Robinson's conviction on direct appeal.

(2)     Robinson filed a motion for postconviction relief, claiming the State committed *Brady*[1] violations, and his counsel was ineffective for failing to move for a mistrial because of those violations.  A Superior Court Commissioner denied relief, holding that although the State violated *Brady*, Robinson suffered no prejudice from the timing of the disclosures, counsel was able to exploit the disclosed information, and counsel made a reasonable tactical decision not to request a mistrial.  The Superior Court adopted the Commissioner's findings.  Robinson raises the same arguments on appeal.  We find Robinson's arguments to be without merit, and affirm.

(3)     On September 14, 2010, at around 9:00 p.m., Glandton and his friend Johnson were standing at the corner of Elm and Van Buren Streets in Wilmington.  An unidentified male acquaintance of Johnson approached them.  While Glandton was on the phone with his cousin, he overheard the man ask Johnson if he could buy Percocet from him.  Johnson agreed.  As Johnson was taking the man's

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

money, Robinson and a man known as "RC"[2] approached the group. Robinson walked up to Johnson and shot him from an arm's length distance. Glandton ran away. Robinson then shot Glandton in the leg. Glandton fell into the street and watched the three men run away. Johnson died from his injuries. Glandton survived, but required surgery and was immobile for seven months.

(4) As first responders arrived, a crowd gathered around Glandton and Johnson. Officer Monet Cummings of the Wilmington Police Department asked Glandton who shot him. Glandton initially said he did not know. Glandton's initial statement was not in any of the officers' police reports.[3] He then shouted to an acquaintance in the crowd, "B[4] did this, your peoples did this."[5] Officer Cummings also heard Glandton shout "they killed Cam and *she*[6] shot him for some pills."[7] Police arrested Robinson and charged him with First Degree Murder, Attempted First Degree Murder, and two counts of Possession of a Firearm during the Commission of a Felony.

(5) On the fifth day of trial, the prosecutor informed Robinson's counsel and the Superior Court that a witness, Keisha Henry, provided her with new

---

[2] Glandton identified the man as a person he knew as "RC" after viewing pictures on Facebook.
[3] Officer Cummings did not write her own report; her supervisor wrote it.
[4] Glandton knew Robinson as "Brandon" or "B."
[5] App. to Opening Br. at 23. Officer Cummings also heard Glandton yell to someone in a crowd of spectators, "your boy B shot me." App. to Opening Br. at 27.
[6] The word "she" is a typographical error as will be discussed later.
[7] App. to Opening Br. at 23 (emphasis added).

information on the way into court. Henry told the prosecutor that she and Glandton had spoken multiple times about the shooting through e-mail, text, and social media. She said that in those conversations, Glandton expressed uncertainty about who shot him. Robinson's counsel examined Henry outside the presence of the jury. Henry testified that Glandton had told her that everything "happened so fast" and that the "word on the street" was that RC had shot him.[8] Henry had previously told police that Glandton told her Robinson had shot him. She could only produce one message from Glandton asking her to call him, and a photograph he sent her of RC as evidence of their conversations.

(6)     Following a seven day Superior Court jury trial, a jury convicted Robinson of First Degree Murder and one count of Possession of a Firearm during the Commission of a Felony. The jury acquitted him of Attempted First Degree Murder and the other weapons offense. The trial judge sentenced Robinson to life in prison for First Degree Murder and eight years for Possession of a Firearm during the Commission of a Felony. This Court affirmed Robinson's conviction on direct appeal.[9]

(7)     Robinson moved *pro se* for postconviction relief on October 2, 2013. The Superior Court appointed counsel, and referred the matter to a Commissioner.

---

[8] *Id.*
[9] *Robinson v. State*, 65 A.3d 617 (Del. 2013).

4

After the court appointed counsel, Robinson filed an amended motion. The Commissioner denied the motion, and the Superior Court affirmed the Commissioner's findings. This appeal followed.

(8) Robinson raises four issues on appeal: (1) the Superior Court erred by denying his direct claim of multiple *Brady* violations; (2) Robinson's counsel was constitutionally ineffective for failing to move for a mistrial based on the alleged *Brady* violations; (3) the Superior Court erred by denying Robinson's claim of cumulative due process errors; and (4) the Superior Court abused its discretion when it refused to grant an evidentiary hearing. We review the Superior Court's denial of a Rule 61 motion for postconviction relief for abuse of discretion.[10] "We review ineffective assistance of counsel claims and alleged *Brady* violations *de novo*."[11]

(9) Robinson first argues that the State violated *Brady* by failing to provide in advance of trial the two statements Glandton made in front of Officer Cummings, and the conversations that Glandton had with Henry. As with all motions for postconviction relief, the Court must determine whether the claims are procedurally barred under Superior Court Criminal Rule 61.[12] When Robinson filed his motion for postconviction relief in 2013, Rule 61(i)(3) provided that

[10] *Neal v. State*, 80 A.3d 935, 941 (Del. 2013).
[11] *Starling v. State*, 130 A.3d 316, 325 (Del. 2015).
[12] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

5

claims that could have been raised on direct appeal could not be asserted in postconviction relief proceedings.[13] Here, Robinson's counsel was aware of the alleged *Brady* violations at trial, and could have raised them in the trial court and on direct appeal. But under former Rule 61(i)(5), if Robinson can show "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction," he is relieved from the procedural default.[14] This Court has held that viable *Brady* claims fall within the miscarriage of justice exception.[15] After our review of Robinson's Brady claims, we find that they are procedurally defaulted and his counsel was not ineffective for failing to move for a mistrial.

(10) In *Brady v. Maryland* the United States Supreme Court held that the State's failure to disclose to the defense material exculpatory evidence violates the Fourteenth Amendment.[16] A *Brady* violation can occur "irrespective of the good faith or bad faith of the prosecution."[17] A *Brady* violation occurs when "[t]he evidence at issue [was] favorable to the accused, either because it [was]

---

[13] *See Bradley v. State*, 135 A.3d 748, 757 (Del. 2016) (holding that the Court must apply the version of the rule governing postconviction proceedings that was in effect at time of filing).
[14] *Id* (quoting Super. Ct. Crim. R. 61(i)(5)).
[15] *Wright v. State*, 91 A.3d 972, 986 (Del. 2014).
[16] 373 U.S. at 87.
[17] *Starling v. State*, 882 A.2d 747, 756 (Del. 2005).

exculpatory, or because it [was] impeaching; [the] evidence [was] suppressed by the State; either willfully or inadvertently; and prejudice . . . ensued."[18]

(11) The Commissioner held that "it [was] clear that Glandton's statements to Cummings and Henry were not disclosed prior to trial, despite being within the reach of the State to do so," thus violating *Brady*.[19] Further, the Commissioner held that "[t]he State had an obligation to provide the statements and, had the Court today found that this resulted in prejudice, the Court would have found in Defendant's favor."[20]

(12) After our review of the statements in question, we find that only one of them is arguably *Brady* material. Henry's statement was not *Brady* material because it was not suppressed. It was only during the middle of trial that Henry told the prosecutor that Glandton had told her that "the word on the street" was that RC had shot him, not Robinson. The prosecutor disclosed the information to Robinson's counsel and the Superior Court as soon as she received it. Robinson's counsel was then able to effectively cross examine Henry and Glandton about the statement at trial. Officer Cumming's testimony that she heard Glandton shout "they killed Cam and *she* shot him for some pills" is nothing more than a typographical error. There was no evidence that a female was present during the

---

[18] *Norman v. State*, 968 A.2d 27, 30 (Del. 2009) (citing *Atkinson*, 778 A.2d at 1063).
[19] Opening Br. Ex. A.
[20] *Id.*

7

incident. Had Officer Cummings actually said "she" rather than "he," counsel on both sides would have explored the statement further. Throughout the entire case, the witnesses consistently testified that three men were involved in the drug transaction and shooting.

(13)  Thus, the only statement that is arguably *Brady* material is Officer Cumming's statement that when she first asked Glandton who had shot him, he said he did not know. As the Commissioner found, the State did not suppress Officer Cumming's statement, but delayed disclosure because the information did not appear in any police reports. Where delayed disclosure occurs:

> If the evidence is both favorable and material, a determination must be made whether its delayed disclosure precluded effective use of the information at trial. When a defendant is confronted with delayed disclosure of *Brady* material, reversal will be granted only if the defendant was denied the opportunity to use the material effectively.[21]

(14)  The Commissioner properly found that trial counsel was able to make effective use of the disclosure at trial. Counsel thoroughly cross-examined Cummings about the statement and relied on it in his closing argument. Through counsel's effective cross examination, he elicited testimony from Glandton that he had not seen the person who shot him, and that it was possible RC had pulled out a gun after he turned and ran. Trial counsel stated in his affidavit that the additional

---

[21] *White v. State*, 816 A.2d 776, 778 (Del. 2003) (internal citations omitted).

evidence was a "windfall" and that he was able to use it effectively.[22] In fact, the jury acquitted Robinson of Attempted First Degree Murder and the related weapons offense, indicating that counsel effectively highlighted Glandton's uncertain memory. Thus, the State's delayed disclosure is not a *Brady* violation requiring reversal.

(15) Robinson next argues that trial counsel was ineffective for failing to request a mistrial when faced with the State's *Brady* violations. Under *Strickland v. Washington*,[23] counsel is constitutionally ineffective if (1) counsel's representation fell below an objective standard of reasonableness, and (2) defendant was prejudiced by counsel's error.[24] To show prejudice, the defendant must demonstrate that it is reasonably likely the outcome of trial would have been different had counsel not committed the error.[25] A defendant bears a heavy burden in establishing counsel was constitutionally ineffective.[26] Further, "there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant."[27]

(16) Counsel could not be ineffective for failing to move for a mistrial if the State did not violate *Brady*. Further, trial counsel made a strategic decision not

---

[22] App. to Opening Br. at 109-11.
[23] 466 U.S. 668, 688 (1984).
[24] *Brooks v. State*, 40 A.3d 346, 354 (Del. 2012).
[25] *Id.*
[26] *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014).
[27] *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013).

9

to request a mistrial. In trial counsel's Rule 61 affidavit, counsel explained that he did not feel the need to request a mistrial when he heard Officer Cumming's testimony because he was able to use that evidence effectively.[28] Robinson also cannot establish prejudice from the alleged violation.

(17) Robinson next argues that the cumulative effect of the State's *Brady* violations together with counsel's ineffectiveness in failing to request a mistrial requires this Court to order a new trial. Because Robinson's underlying claims are without merit or did not prejudice him, he has failed to establish cumulative error.

(18) Finally, Robinson argues that the case should be remanded because the Superior Court abused its discretion when it refused to hold an evidentiary hearing. Superior Court Criminal Rule 61(h) provides that the Superior Court may order an evidentiary hearing if, after reviewing parties' submissions, it finds that one is desirable. "Rule 61 does not mandate the scheduling of an evidentiary hearing in every case, but, rather, leaves it to the Superior Court to determine whether an evidentiary hearing is needed."[29] The record below sufficiently informed the court of the nature of Robinson's claims as evidenced by the Commissioner's decision. Thus, the Superior Court acted within its broad

---

[28] App. to Opening Br. at 109-11.
[29] *Getz v. State*, 77 A.3d 271, 2013 WL 5656208, at *1 (Del. Oct. 15, 2013) (Table).

10

discretion to summarily dispose of Robinson's motion without holding an evidentiary hearing.

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice

11