IN THE SUPREME COURT OF THE STATE OF DELAWARE

EDWARD WILSON, §
§ No. 5, 2025
    Defendant Below, §
    Appellant, §
§ Court Below: Superior Court
    v. § of the State of Delaware
§
STATE OF DELAWARE, § Cr. ID. No. 2308009222A
§
    Appellee. §

Submitted: November 19, 2025
Decided: January 15, 2026

Before **VALIHURA**, **TRAYNOR**, and **LEGROW**, Justices.

## ORDER

After consideration of the parties' briefs and the Superior Court record, it appears to the Court that:

(1)  Edward Wilson was arrested and charged with trespassing, various firearm offenses, criminal impersonation, and resisting arrest. After the first day of trial, the State disclosed alleged *Brady* material—a Mirandized statement by a witness, Tykisha Stanford, that she saw another individual in possession of the firearm at issue. Wilson moved to dismiss the firearm charges, but the Superior Court denied the motion, holding that the admission of a stipulation summarizing

1

Stanford's statement was a suitable remedy for the delayed disclosure. We affirm Wilson's conviction.

(2) In August 2023, two police officers, Corporal Fawzi and Officer Smith, responded to a trespass call in Wilmington, Delaware. The officers entered the residence through the unlocked back door, announced themselves, and discovered Tykisha Stanford and Edward Wilson asleep in the living room. Both individuals stated that an individual called "Chevy" had let them into the residence.[1]

(3) The officers spotted a loaded firearm on a table on the opposite side of the room from where Wilson was sleeping. The officers found two of Wilson's belongings in close proximity to the firearm: his shoes were directly in front of the table with the gun, and his cigar—which he specifically asked the officers to retrieve—was on the table inches away from the firearm.

(4) Upon further investigation, the officers learned that the firearm had been reported stolen a month earlier. A senior forensic DNA analyst tested the firearm against Wilson's DNA; the swabs taken from the firearm's frame contained DNA from two individuals and "produced a single-source DNA profile" matching Wilson.[2] Corporal Fawzi also applied for a warrant to obtain Chevy's DNA to test

---

[1] App. to Opening Br. at A61, A71 (Trial Tr.).

[2] *Id.* at A105 (Trial Tr.).

it against the firearm, but the warrant application was denied because the judge believed that "Stanford did not specifically state that it was Chevy's firearm."[3]

(5)    Wilson was indicted for (i) Possession of a Firearm by a Person Prohibited, (ii) Possession of Ammunition by a Person Prohibited, (iii) Receiving a Stolen Firearm, (iv) Criminal Trespass First Degree, (v) Criminal Impersonation, and (vi) Resisting Arrest.  The person-prohibited charges were severed and tried in a second trial to the same jury immediately following the verdict in the first trial.

(6)    On the first day of trial, the parties made their opening statements and questioned Corporal Fawzi, Officer Smith, and the DNA analyst.  Later that evening, the State emailed defense counsel a copy of a previously unproduced police report. The report memorialized a statement that Stanford gave to the police in which she recalled seeing Chevy with the firearm on multiple occasions before Wilson's arrest. Wilson's counsel immediately raised the delayed disclosure with the trial court, alleging that the report contained *Brady* material that was not produced in a timely manner.  As a remedy, defense counsel sought dismissal of the firearm charges.

(7)    The judge denied the motion, reasoning that dismissal would be "an extreme remedy" because "whether Chevy was in possession of the gun does not materially negate whether [Wilson] was in possession of the gun given the DNA

---

[3] *Id.* at A78 (Trial Tr.); *id.* at A290–93 (Delayed Disclosure Materials).

evidence that's been provided in this case."[4] The judge, however, recognized that the evidence might be material to the jury's determination of whether Wilson knew that the gun was stolen. The court concluded that the prejudice caused by the delayed disclosure could be remedied by allowing the jury to hear Stanford's statement. The parties agreed to admit the statement through a stipulation, which the judge read to the jury, stating:

> Tykisha was read her Miranda rights, which she waived by stating 'yes' to understand her rights and 'yes' to agreeing to speak with me.
>
> Tykisha said the day that she was arrested she was napping at Chevy's grandmother's house. Tykisha said Chevy told them she could nap in the house. Tykisha said Chevy brought them over to the house and he unlocked the door with a key. Tykisha said the house was fully furnished, had power and cable. Tykisha said she did not think they were doing anything wrong because Chevy had the key and the house was furnished.
>
> Tykisha said she fell asleep and woke up to the police in the house. Tykisha said she did not know there was a gun in the room with her. Tykisha said Chevy had a gun outside before she fell asleep.
>
> Tykisha said Chevy was flashing the gun around about a week before she was arrested. Tykisha said Chevy was flashy. Tykisha said she did not know when Chevy brought the gun into the house while she was sleeping. Tykisha said she believed the firearm was a black or grey handgun but could not provide further information about the weapon.[5]

(8)     Defense counsel reread the stipulation to the jury during closing arguments and argued that secondary transfer could explain Wilson's DNA on the

---

[4] App. to Opening Br. at A134–36 (Trial Tr.).

[5] *Id.* at A138, A169–71, A178–79 (Trial Tr.).

4

firearm—Wilson had contact with Chevy, who then held the gun. Nevertheless, the jury convicted Wilson of all charges.

(9) Wilson now appeals, arguing that (i) the evidence disclosed after the start of trial was material; (ii) the Superior Court's remedy was inadequate because it failed "to recognize the exculpatory and impeaching nature of the *Brady* material"; and (iii) the State should be held accountable for its "persistent pattern of [] suppressing *Brady* material."[6]

## ANALYSIS

(10) "We review questions of law *de novo*, including issues arising from the State's *Brady* responsibilities."[7] Under *Brady*, "the prosecution has a constitutional obligation to disclose exculpatory and impeachment evidence within its possession to the defense when that evidence might be material to the outcome of the case."[8] In the case of a delayed disclosure of alleged *Brady* evidence, the court must find that "the evidence is both favorable and material."[9] Favorable evidence is evidence that is either exculpatory or impeaching,[10] and evidence is material when its "suppression

---

[6] Appellant's Opening Br. at 5–29.

[7] *Mobley v. State*, 346 A.3d 1127, 2024 WL 5316320, at *6 (Del. Dec. 5, 2024) (TABLE) (referencing *Risper v. State*, 250 A.3d 76, 87 (Del. 2021) and *Wright v. State*, 91 A.3d 972, 982 (Del. 2014)).

[8] *Risper*, 250 A.3d at 90.

[9] *White v. State*, 816 A.2d 776, 778 (Del. 2003).

[10] *McGuiness v. State*, 312 A.3d 1156, 1180 (Del. 2024) (citations omitted).

. . . undermines confidence in the outcome of the trial."[11]  If the evidence is favorable and material, the court must determine "whether its 'delayed disclosure precluded . . . effective use of the information at trial.'"[12]  "[R]eversal will be granted only if the defendant was denied the opportunity to use the material effectively."[13]

(11)  Stanford's statement qualifies as favorable evidence because it is impeaching.  Impeachment evidence "is evidence that 'the defense can use to impeach a prosecution witness by showing bias or interest.'"[14]  Stanford's statement could be used to question the overall integrity and thoroughness of the officers' investigation.  In particular, Stanford's statements that "Chevy was flashing the gun around about a week before" and "Chevy had a gun outside before she fell asleep" could cast doubt on Corporal Fawzi's credibility in light of his assertion to the warrant judge that "Stanford did not specifically state that it was Chevy's firearm."[15]  Since the statement is impeaching, it qualifies as favorable.[16]

---

[11] *Cooper v. State*, 992 A.2d 1236, 2010 WL 1451486, at *2 (Del. Apr. 12, 2010) (TABLE).

[12] *White*, 816 A.2d at 778 (quoting *Atkinson v. State*, 778 A.2d 1058, 1062 (Del. 2001)).

[13] *Atkinson*, 778 A.2d at 1062 (quoting *Rose v. State*, 542 A.2d 1196, 1199 (Del. Super. 1988)).

[14] *Wright*, 91 A.3d at 989 (quoting *Jackson v. State*, 770 A.2d 506, 515 (Del. 2001)).

[15] App. to Opening Br. at A78, A169–71, A178–79 (Trial Tr.).

[16] Wilson's argument that the evidence is exculpatory is less convincing.  Stanford's statement did not discuss Wilson's knowledge of the gun's origin or any specific physical interaction between Wilson and Chevy that would lend credence to the secondary-transfer theory.  At best, the evidence is marginally exculpatory.

(12) Although the evidence may be favorable to Wilson, the materiality requirement was not met; Stanford's statement does not undermine confidence in the trial's outcome. The State needed to prove actual or constructive possession for the purposes of a person-prohibited charge.[17] Actual possession is defined as "knowingly ha[ving] direct physical control over [the item] . . . that amounts to a conscious dominion, control and authority."[18] A person constructively possesses a firearm if the individual "had knowledge of the gun's location, an ability to put the gun under his control, and intent to possess or otherwise control the gun."[19]

(13) Chevy's alleged prior possession does not negate evidence that Wilson possessed the gun because more than one person may constructively possess a firearm.[20] The jury heard sufficient evidence—the DNA match and the gun's proximity to Wilson's belongings—to support the conclusion that he possessed the gun, and the jury decided as much even after being presented with Stanford's

---

[17] *Stevenson v. State*, 181 A.3d 631, 2018 WL 1136524, at *2 (Del. 2018) (TABLE).

[18] *Sawyer v. State*, 339 A.3d 1227, 2025 WL 707871, at *3 (Del. Mar. 5, 2025) (TABLE) (quoting *Carroll v. State*, 158 A.3d 885, 2017 WL 1223564, at *2 (Del. Mar. 27, 2017) (TABLE)).

[19] *Ringgold v. State*, 41 A.3d 430, 2012 WL 983199, at *2 (Del. Mar. 20, 2012) (TABLE); *Lecates v. State*, 987 A.2d 413, 426 (Del. 2009), holding modified by *State v. Clayton*, 988 A.2d 935 (Del. 2010) (analyzing possession of a deadly weapon by a person prohibited claims under the same standard as drug possession claims outlined in *White v. State*) (citing *White v. State*, 906 A.2d 82, 86 (Del. 2006)).

[20] *See Landry v. State*, 341 A.3d 510, 2025 WL 1445329, at *3 (Del. May 20, 2025) (TABLE) ("Landry's contention that others may have had access to Room 216 and the contraband therein does not render the State's evidence insufficient because the State did not need to prove sole possession in order to establish constructive possession.").

statement. Wilson may believe that Stanford's statement aided his theory of secondary transfer, but the delayed disclosure does not undermine confidence in the outcome of the trial because the jury heard the statement's substance.[21] Because we did not find that Stanford's statement was material, reversal is not warranted.

(14) Wilson also alleges that the trial court's remedy—entry into evidence of a stipulation to the contents of Stanford's statement—was improper, claiming that the stipulation was rendered "functionally meaningless" because Stanford's credibility was at issue and she did not testify.[22] We disagree. The stipulation, taken as true, was as effective as admitting the evidence through her live testimony. The fact that the jury remained convinced of guilt neither negates the stipulation's effectiveness as a remedy nor suggests that Stanford's credibility was a critical issue. Accordingly, we find no support for Wilson's contention that dismissal of the charges was the only appropriate remedy.

(15) Finally, Wilson submits that reversal is required because the State has engaged in a persistent pattern of prosecutorial misconduct. Under *Hunter v. State*,

---

[21] *See Sawyer*, 2025 WL 707871, at *6 (finding the secondary transfer theory unconvincing and holding that there was sufficient evidence to find constructive possession); *see also Lecates*, 987 A.2d at 426 ("Although 'mere proximity to, or awareness of [contraband] is not sufficient to establish constructive possession,' it is well established that circumstantial evidence may prove constructive possession.") (quoting *White*, 906 A.2d at 86).

[22] Appellant's Opening Br. at 17 ("the timing and manner of the disclosure left Wilson unable to provide the jury any basis to believe the statement, rendering the stipulation functionally meaningless.").

reversal is permitted "where the misconduct is part of a 'persistent pattern of prosecutorial misconduct' over different trials such that a failure to reverse would compromise the integrity of the judicial process."[23] Wilson has not identified any such pattern; he cites this Court's recent decisions in *Mobley v. State*[24] and *Hazelett v. State*,[25] but those cases encompass different *Brady* obligations and do not establish a pattern of misconduct.

(16) For the foregoing reasons, we hold that the Superior Court did not err in denying Wilson's motion to dismiss the firearm charges.

NOW, THEREFORE, IT IS ORDERED that the decision of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

---

[23] *Saavedra v. State*, 225 A.3d 364, 373 (Del. 2020) (quoting *Hunter v. State*, 815 A.2d 730, 737–38 (Del. 2002)).

[24] 2024 WL 5316320.

[25] 340 A.3d 1150, 2025 WL 1202488 (Del. 2025) (TABLE) (quotation omitted).