# United States Court of Appeals
## For the First Circuit

No. 14-1563

UNITED STATES OF AMERICA,

Appellee,

v.

KENNY TORRES-COLÓN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Howard, Stahl, and Barron,
Circuit Judges.

Javier A. Morales-Ramos for appellant.
Max J. Pérez-Bouret, Assistant United States Attorney, with whom Rosa Emilia Rodríquez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Francisco A. Besosa-Martínez, Assistant United States Attorney, were on brief, for appellee.

June 12, 2015

**HOWARD, Circuit Judge**. Defendant-Appellant Kenny Torres-Colón appeals his conviction and sentence for unlawful possession of a firearm. Although two errors occurred at trial, both are ultimately harmless. Thus, we affirm his conviction.

## I.

During the early morning hours of March 27, 2012, Sergeant Edgardo Alvarado-Martínez and Agent Alberto Vázquez-Torres were patrolling Highway 52 in Salinas, Puerto Rico. At approximately 1:00 a.m., the officers recorded an oncoming vehicle traveling at a speed of eighty miles per hour, exceeding the fifty-five mile per hour speed limit. Activating their cruiser's siren and lights, the officers followed the vehicle. The vehicle momentarily slowed down as if to stop, but then took off again at a high speed. The officers engaged in a hot pursuit, increasing their own speed to between eighty and ninety miles per hour.

After pursuing the vehicle for approximately two miles, both officers witnessed the individual in the front passenger seat toss something from the passenger-side window. Sergeant Alvarado-Martínez, who had a better vantage point from the cruiser's passenger seat, observed the fleeing vehicle's passenger stick his body half-way out of the window and throw something "solid and black" from the vehicle that "made a solid sound, str[uck] the [highway] barrier, and fell to the ground." Agent Vázquez-Torres, who was driving, also saw something solid fly from the passenger-

side window.  Moments later, both officers saw the passenger throw a second, "somewhat larger" item onto the roadway.  By radio, Sergeant Alvarado-Martínez requested that a nearby third officer, Agent Lorna Padilla-Cartagena, attempt to locate the discarded objects, indicating that one item "might possibly have been a firearm."  After about ten miles, the fleeing vehicle was met by a police roadblock and forced to exit the highway.  The vehicle stopped in a parking lot a short distance away.  The driver, Luis J. Vázquez-Álvarez ("Vázquez"), and the passenger, defendant Torres-Colón, were both arrested.  Sergeant Alvarado-Martínez reconvened with Agent Padilla-Cartagena on Highway 52, who had recovered a .40 caliber Glock pistol and a fanny pack containing seventy-two rounds of ammunition, three high-capacity 22-round magazines, and two 15-round magazines.  There was a hole in the fanny pack, and bullets were scattered around the area.

The defendant, who had a prior felony conviction, was charged with one count of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g).  At trial, defense counsel argued that the defendant did not knowingly possess the firearm because he may have been unaware of its existence until Vázquez placed it in his lap, at which point he quickly threw it out the window.  The jury convicted the defendant, and the district court sentenced him to sixty months' imprisonment.

## II.

**A.        The Use of Vázquez's Plea Agreement**

The defendant first contends that the government improperly introduced into evidence the stipulated facts from the plea agreement of the vehicle's driver, Vázquez, as substantive evidence of the defendant's guilt.[1]  Although we agree, we find the error harmless.

Vázquez separately pled guilty to a charge arising out of the same high-speed chase.  The government subpoenaed Vázquez to testify at the defendant's trial, and called him as the first witness.  However, before he took the stand, Vázquez's own counsel alerted the parties and the court that Vázquez planned to assert his Fifth Amendment right against self-incrimination.  The district court ruled that Vázquez was required to testify to the facts to which he pled guilty, but that it would instruct Vázquez, "on a question-by-question basis" whether he should answer a particular question or whether the question went beyond the plea agreement's scope.  The court agreed that the government could "sit [Vázquez] down and show him his statement and ask him if that was his statement."

---

[1]   Because the entire plea agreement was not entered into evidence and is not otherwise included in the record, the exact nature of Vázquez's conviction is unclear.  During his testimony, he described the charge only as a "weapons violation."

Commensurate with this discussion, Vázquez's testimony was short and served largely, if not exclusively, as a vehicle to read the plea agreement's stipulated facts to the jury. Although hesitant to answer any questions at first, Vázquez begrudgingly complied upon prompting by the district court judge. After establishing that Vázquez was not testifying as a cooperating witness, the government immediately homed in on his guilty plea. Vázquez acknowledged that he had entered into a plea agreement in connection with "a weapons violation," although he clarified again that he had not cooperated with the government. He then volunteered that, in making the agreement, he "was accepting that the weapon was mine." That spontaneous statement was not prompted by the prosecutor's questioning.

The government then requested to offer, over the defendant's objection, the plea agreement's stipulated facts. Immediately before reading the stipulated facts into the record, the prosecutor asked: "You mentioned earlier that you admitted culpability that the gun was yours, that's what you testified before; right?" The government then read the following:

> During the high speed chase, the officer observed when the passenger, later identified as Kenny Torres-Colón, threw a firearm and fanny pack through the window. The firearm was later described as a Glock pistol model 22, .40 caliber bearing serial number BVW-2991US and 72 rounds of .40-caliber ammunition. Eventually the officers detained the vehicle and arrested both subjects.

-5-

Direct examination ended almost immediately thereafter, and defense counsel did not cross-examine Vázquez. The full plea agreement was not entered as an exhibit. In its closing argument rebuttal, the government reminded the jury that Vázquez had pled guilty to the statement of facts accepted as part of his guilty plea, including the paragraph read to the jury. During deliberations, the jury requested to see the plea agreement (specifically page eleven, containing the stipulated statement of facts). After consulting with counsel, the court informed the jury that the plea agreement had not been entered into evidence and, accordingly, that the jurors would have to rely on their recollection of the testimony.

As with other challenges to the admissibility of evidence, we review for abuse of discretion the district court's ruling permitting the prosecutor to read a portion of the plea agreement into evidence. See United States v. Morales-Machuca, 546 F.3d 13, 22 (1st Cir. 2008). We begin with the uncontroversial proposition that a defendant "is entitled to have the question of his guilt determined upon the evidence against him, not on whether a codefendant or government witness has been convicted of the same charge." United States v. Dworken, 855 F.2d 12, 30 (1st Cir. 1988) (citation and internal quotation marks omitted). As a result, the guilty plea of a witness cannot be used as substantive evidence to prove "the guilt of a defendant charged with similar crimes." Id.

-6-

at 30-31 (citation and internal quotation marks omitted).  A guilty plea may be introduced, however, "for the limited purpose of assessing the witness's credibility," United States v. Johnson, 26 F.3d 669, 677 (7th Cir. 1994), or to "dampen the effect of an anticipated attack on the witness's credibility," Dworken, 855 F.2d at 30.  But it is impermissible for the government, in effect, to "borrow proof from another person's conviction."  United States v. Woods, 764 F.3d 1242, 1246 (10th Cir. 2014), cert. denied, 135 S. Ct. 1866 (2015).

The record here lacks either a clearly articulated ground for the government's admission of the plea agreement's factual statement or a stated rationale by the district court for overruling the defendant's objection.  The government claims that the plea was used to "impeach" Vázquez's testimony "after he invoked his Fifth Amendment rights and refused to testify about the facts of the case."  Yet, rather than attempt to ask any questions that would have elicited information about the course of events which could then be impeached, the government instead jumped directly to asking about the guilty plea itself.  Moreover, even assuming Vázquez's general invocation of the Fifth Amendment before trial permitted the government to presume that he would remain silent in the face of such questions, any refusal to testify would,

-7-

of course, leave no testimonial statements to impeach.[2] Cf. United States v. Santiago, 566 F.3d 65, 70 (1st Cir. 2009) ("[N]either the prosecution nor the defense may call a witness to the stand simply to compel him to invoke the privilege against self-incrimination." (internal quotation marks omitted)).

The government also avers that the plea agreement was read "for the sole purpose of corroborating the stipulated version of the facts . . . and not to impute guilt on Torres-Colón by association." But introducing corroborating facts by way of the plea agreement is, by definition, a substantive use. It is difficult to comprehend how the statement did not impute guilt,

_____

[2] During trial and again at oral argument before us -- though absent from its appellate brief -- the government emphasized a second possible credibility-based use: disputing Vázquez's assertion at trial that he owned the firearm. But Vázquez only made this unprompted, spontaneous statement during direct examination, and the record reflects that the government had already planned to introduce the plea agreement. Even accepting the dubious proposition that the government always intended to offer the plea agreement for this purpose, the stipulated facts say nothing about ownership of the firearm. Although two statements "need not be directly contradictory in order to be deemed inconsistent," United States v. Richardson, 515 F.3d 74, 84 (1st Cir. 2008), Vázquez's claim of ownership in no way contradicts the plea agreement's short description of the chase. Nor, given its limited relevance to the question of possession, is the owner's identity the type of omitted detail that "would have been 'natural' for the witness to include" in the prior statement such that a sudden avowal on direct examination can be described as inconsistent. United States v. Meserve, 271 F.3d 314, 321 (1st Cir. 2001). Because the government failed to establish an inconsistency that would allow admission of the plea agreement for the purpose of impeachment, admission on this ground was not within the district court's discretion. See Fed. R. Evid. 613(b); United States v. Hale, 422 U.S. 171, 176 (1975) ("[T]he court must be persuaded that the statements are indeed inconsistent.").

given that it explicitly referenced the defendant by name. Cf. United States v. Peterman, 841 F.2d 1474, 1480-81 (10th Cir. 1988) (noting that the district court had carefully restricted impeachment of the witness and screened the questions asked to "assure they contained no references to [the defendant]"). This is more than guilt by association; it is guilt vel non.

The only inference that fairly can be drawn from the record is that the government offered the stipulated facts "as substantive evidence of the guilt of a defendant charged with similar crimes," Dworken, 855 F.2d at 31. Indeed, during trial the government essentially acknowledged as much. That it planned from the start to put Vázquez on the stand as its first witness merely to read the stipulated facts into evidence suggests that the government wanted to get those facts on the record at the very start of its case. This use strikes us as "the bald introduction of a witness's guilty plea concerning facts or events similar to that for which the defendant is on trial . . . suggesting to the trier of fact that the defendant should be found guilty merely because of the witness's guilty plea." United States v. Universal Rehab. Servs. (PA), Inc., 205 F.3d 657, 668 (3d Cir. 2000) (en banc). The government cites no case -- and we can find none -- in which the guilty plea of a codefendant was permissibly used in this substantive way. Even more tellingly, the stipulated facts are written in terms of what "the officer[s] observed." Because those

-9-

officers later testified in court, we can discern nothing that the plea agreement added to the body of evidence that was not already covered by that later in-court testimony, other than implying the defendant's guilt.

Allowing the stipulated facts to be read into evidence under these circumstances was not a permissible exercise of the trial judge's discretion under Federal Rule of Evidence 403, especially where the judge failed to instruct the jury that it could not consider Vázquez's guilty plea as substantive evidence of the defendant's guilt. See Dworken, 855 F.2d at 31–32 (noting that "cautionary instructions limiting the jury's use of the guilty plea to permissible purposes are critical" (internal quotation marks and citation omitted)). Despite the error, however, reversal of the defendant's conviction is not required if the improper admission of information concerning Vázquez's plea likely did not affect the outcome of trial. See United States v. Tom, 330 F.3d 83, 95 (1st Cir. 2003). To be sure, the jury's request to see the plea agreement during deliberations indicates that some jurors may have placed some emphasis on it. But because the stipulated facts were entirely duplicative of the other testimony that the government offered at trial, any prejudice was minimal.

The government also provided overwhelming evidence that the defendant knowingly possessed the firearm, eliminating any concern that he was found guilty merely by association. Knowing

-10-

possession may be proven through actual or constructive possession, and the defendant need not personally own the firearm. United States v. Robinson, 473 F.3d 387, 398-99 (1st Cir. 2007). Actual possession is "the state of immediate, hands-on physical possession," while constructive possession exists where the defendant "has the power and intention of exercising dominion and control over the firearm." United States v. Guzmán-Montañez, 756 F.3d 1, 8 (1st Cir. 2014). "Possession, whether actual or constructive, can be extremely brief: 'a minute of possession is as much an offense as a year of possession.'" United States v. DeCologero, 530 F.3d 36, 67 (1st Cir. 2008); see also United States v. Teemer, 394 F.3d 59, 63 (1st Cir. 2005) (noting that "the briefest moment of possession may be enough for a conviction"). Sergeant Alvarado-Martínez and Agent Vázquez-Torres both testified that they directly observed the defendant pull his body out of the passenger window and fling a solid black object onto the roadway, followed by a second somewhat larger black object. Agent Padilla-Cartagena further testified to recovering a .40 caliber Glock pistol, a fanny pack, several magazines, and ammunition in the vicinity of where the items were thrown from the vehicle. She stated that no other vehicles passed by that area between the time that the chase began and when she recovered the items. This collective testimony provides overwhelming evidence of the defendant's actual possession of the firearm.

In addition, ample evidence rebutted the defendant's defense to that possession. Relying on the rule that "mere proximity to a weapon," standing alone, is insufficient to demonstrate actual or constructive possession, United States v. Weems, 322 F.3d 18, 24 (1st Cir. 2003), counsel pressed a "hot potato" defense, suggesting that the defendant may not have known about the firearm until Vázquez placed it in his lap. Yet the testifying officers observed the defendant fling the firearm and fanny pack of ammunition onto the roadway from a speeding vehicle actively evading police during a high-speed chase, indicating that the defendant exercised a stake in the items and some decision-making power over what to do with them. Cf. United States v. Ridolfi, 768 F.3d 57, 62 (1st Cir. 2014). Additionally, when the vehicle was searched after the high-speed chase, officers recovered a motorcycle mask, a large Ziploc bag containing several smaller bags appropriate for packaging drugs, two expelled .40 caliber shell casings, and a "chewed up" bullet (a fired bullet that was defective because the projectile had not been expelled from the casing). Collectively, this circumstantial evidence provided strong indicia that the defendant had knowledge not only of the firearm, but also of a larger criminal enterprise. See United States v. Ortiz, 966 F.2d 707, 713–14 (1st Cir. 1992). Finally, we note that aspects of Vázquez's testimony actually proved helpful to the defendant, particularly Vázquez's acknowledgment that the gun

belonged to him and not the defendant, a point defense counsel emphasized during closing argument to support his argument that the defendant never possessed the firearm. Accordingly, the district court's error here "is insignificant when considered against the totality of the evidence presented at trial."[3] <u>United States</u> v. <u>Landron-Class</u>, 696 F.3d 62, 71 (1st Cir. 2012).

**B.       Prosecutor's Statements During Rebuttal Argument**

During the government's rebuttal, the prosecutor asked the jurors to consider, when making their decision, whether they would want the defendant driving along the highway beside them. The defendant did not object to this statement at trial, but now contends that it so poisoned the well as to affect the trial's outcome. We agree that the prosecutor's statement was improper, but conclude that it was not sufficiently prejudicial to overcome

---

[3] The defendant also asserts that there was insufficient evidence for a rational jury to conclude that he knowingly possessed the firearm, a claim he raised in the context of his motion for acquittal. We review the denial of a Rule 29 motion de novo, examining the evidence in the light most favorable to the jury's verdict. <u>United States</u> v. <u>García-Carrasquillo</u>, 483 F.3d 124, 129-30 (1st Cir. 2007). As summarized above, a rational jury could find that the defendant knowingly possessed the firearm. The "government's evidence is not insufficient simply because the defense presented a competing scenario." <u>United States</u> v. <u>Ayala-García</u>, 574 F.3d 5, 11 (1st Cir. 2009).

the high hurdle of plain error.[4]  See United States v. Duarte, 246

F.3d 56, 60 (1st Cir. 2001) (setting forth plain error standard).

The prosecutor's problematic remark played off of defense

counsel's entreaty during his own closing argument.  Defense

counsel stated:

> Your days are not going to be the same when
> you go [by] Salinas.  You are going to be
> remember [sic] this day because you are going
> to be remembering Kenny Torres-Colón.  When
> you see the Salinas toll, when you see the
> police station, you're going to remember Kenny
> Torres-Colón.  Why?  Because you are here, you
> are part of his history.  We are all part of
> his history.

The prosecutor then opened his rebuttal argument with a direct

allusion to this sentiment:

> Now, Brother Counsel wants you to get Kenny
> Torres-Colón out of here, like get him out of
> here, in light of his arguments, based on the
> facts and based on the evidence of this day.
> And he wants you to remember, in the upcoming
> days when you go by Salinas, of your decision
> today.  Well, the government also wants you to
> remember the decision that you make today when
> [you're] driving down Salinas and you wonder,
> depending on your decision, whether Kenny
> Torres-Colon is also driving along by you in
> the car beside you.

---

[4] Defense counsel raised the issue in his Rule 29 motion following trial, but that belated complaint was insufficient to preserve this claim.  Counsel's failure to timely object deprived the trial court of an opportunity to take corrective action or provide a limiting instruction.  To preserve a claim of misconduct during closing argument, a contemporaneous objection must be made during or directly after the prosecutor's closing argument.  E.g., United States v. Trinidad-Acosta, 773 F.3d 298, 313-14 (1st Cir. 2014).

We have consistently held that a prosecutor's remarks are improper "where they serve no purpose other than to inflame the passions and prejudices of the jury, and to interject issues broader than the guilt or innocence of the accused." United States v. Santos-Rivera, 726 F.3d 17, 27 (1st Cir. 2013) (citation and internal quotation marks omitted). The challenged statement here encouraged the jury "to act in ways other than as dispassionate arbiters of the facts." United States v. Mooney, 315 F.3d 54, 59 (1st Cir. 2002). The naked appeal to the jurors' sense of whether they would want the defendant driving alongside them implicitly -- if not explicitly -- invited the jury to mull considerations which are irrelevant to determining the defendant's guilt or innocence based solely on the trial evidence.

We view problematic statements during rebuttal with particular scrutiny, because the government's rebuttal argument offers the last word before the jury begins deliberations. United States v. Ayala-García, 574 F.3d 5, 20 (1st Cir. 2009). While "some leeway is appropriate" when comments "may fairly be seen as a response to comparable remarks by defense counsel," id. at 18, we read the defense's plea to "remember Kenny Torres-Colón" as a reminder of the solemnity of the jurors' duty to render a fair and impartial verdict, not an invocation of considerations outside the evidence presented at trial. By contrast, the challenged rebuttal statement raised the specter of a threat to public safety -- and

the jurors' own personal security -- if the jury voted to acquit. Cf. Robinson, 473 F.3d at 397 (finding impropriety where the government "resort[ed] to unsupported hypotheticals" about gun violence during closing argument); Mooney, 315 F.3d at 59 (finding that the government "crossed the bounds of permissible argument" by invoking "the jurors' sense of community safety" during opening statements).

Although the error here was clear and obvious, we cannot conclude that the prosecutor's statement "so poisoned the well that the trial's outcome was likely affected." Arrieta-Agressot v. United States, 3 F.3d 525, 528 (1st Cir. 1993) (citation and internal quotation marks omitted). The defendant claims that prejudice was apparent here because there was "scant" evidence that he knowingly possessed the firearm. But we reject that contention since, as discussed above, the government presented ample evidence from which the jury could convict the defendant. Cf. United States v. Verrecchia, 196 F.3d 294, 302 (1st Cir. 1999) ("Given the strength of the evidence against [the defendant], nothing in the prosecutor's arguments amounted to plain error.").

C.      **Remaining Issues**

The defendant's remaining claims do not warrant relief. First, the argument that his conviction exceeds Congress's Commerce Clause power, because the fact of the firearm's origin in Austria supplies an insufficient nexus to interstate commerce, is "no

-16-

longer open in this circuit."  United States v. Joost, 92 F.3d 7, 14 (1st Cir. 1996).  We have "repeatedly and unreservedly rejected" this claim, holding instead that § 922(g)(1) is constitutional when applied to "the possession of a gun that previously traveled interstate."  United States v. Roszkowski, 700 F.3d 50, 57-58 (1st Cir. 2012).

In passing, the defendant also avers that the indictment and verdict were faulty because the indictment charged him with unlawfully possessing a firearm "in and affecting interstate commerce," rather than "in or affecting interstate commerce" as the statute provides.  See 18 U.S.C. § 922(g) (emphasis added).  He contends that the government failed to show he possessed the firearm both "in" and "affecting" commerce.  But since he neither develops this argument nor cites any authority to support it, it is waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  In any event, it is well-established that where an indictment charges in the conjunctive (using "and"), but the statute is framed in the disjunctive (using "or"), the government need only prove one of the charged acts at trial.  See United States v. García-Torres, 341 F.3d 61, 66-67 (1st Cir. 2003); see also United States v. Rice, 520 F.3d 811, 816-17 (7th Cir. 2008).  Whether one describes possession of a firearm manufactured abroad as "in" or "affecting" commerce, the government provided sufficient evidence to prove the limited interstate nexus that § 922(g)

requires.  See United States v. Corey, 207 F.3d 84, 88 (1st Cir. 2000).

The defendant's related Confrontation Clause claim also misses the mark.  During direct examination, the government's firearms expert established that the firearm's country of origin was Austria based on a manufacturing inscription on the right side of the firearm's frame that stated "made in Austria" and a similar mark on the slide that stated "Austria."  The expert further testified that because firearms are not manufactured in Puerto Rico, the firearm must have traveled in interstate or foreign commerce.  Although the defendant complains that the expert's own presentation was testimonial, his emphasis is misplaced.  Our Confrontation Clause analysis asks not whether the testifying witness's own statements are testimonial (they undoubtedly always will be); instead, the operative inquiry is whether the statements of a witness "absent from trial" are testimonial.  Crawford v. Washington, 541 U.S. 36, 59 (2004) (emphasis added).  Here, given its tangential relation to any future prosecution, the manufacturing label's statement that the firearm was made in Austria -- even if hearsay -- was plainly nontestimonial in the sense that it was not made by the manufacturer with "the primary purpose . . . to establish or prove past events potentially relevant to later criminal prosecution."  Davis v. Washington, 547 U.S. 813, 822 (2006).

-18-

Finally, the defendant contends that the evidence was insufficient to establish that the firearm he threw from the vehicle was semiautomatic -- a necessary factual predicate for the base offense level the district court applied at the sentencing phase. See U.S.S.G. § 2K2.1(a)(4)(B). We review the district court's findings of fact at sentencing for clear error, United States v. Wallace, 573 F.3d 82, 92 (1st Cir. 2009), and find none. The government pointed out during the sentencing hearing that the trial evidence established the firearm was a .40-caliber Glock pistol, commonly known to be semiautomatic. The court nevertheless granted a continuance to allow the government to proffer additional evidence at the sentencing hearing that the Glock pistol was indeed semiautomatic. Special Agent Jorge Rosendo testified that Glock pistols are manufactured as semiautomatic weapons, and that he personally conducted a "dry test" to determine if the weapon in question worked in accordance with its design. The test entailed moving the slide back and forth to see if the trigger reset (as in a semiautomatic firearm) or remained activated (as it would for a modified, automatic firearm). Agent Rosendo testified that "the slide returned, and the trigger reset." From this testimony, the district court could find by a preponderance of the evidence that the firearm was an unaltered Glock and, consequently, a semiautomatic firearm. Though defense counsel attempted to expose perceived weaknesses in Agent Rosendo's testimony during cross-

examination, the district court did not clearly err in finding that effort unpersuasive.

### III.

For the foregoing reasons, we **<u>affirm</u>** the defendant's conviction and sentence.